## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| NICHOLAS BRAEMER, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>KEITH D. LOWEY, )<br>)<br>)<br>Appellee. ) | Civil Docket no. 08-cv-348-P-S<br>Bankruptcy No. 04-20734 |

### ORDER ON MOTION TO DISMISS

Before the Court are Appellee's Motion to Dismiss Appeal as Moot (Docket # 4) as well as Appellee's Request for Oral Argument (Docket # 12). With respect to the request for oral argument, the Court has determined that this matter can be decided based on the parties' written submissions and, therefore, DENIES the request for oral argument in accordance with District of Maine Local Rule 7(f). As explained herein, the Motion to Dismiss (Docket # 4) is GRANTED.

### I.  STANDARD OF REVIEW

Generally, when a party chooses to appeal a bankruptcy court decision to the district court pursuant to 28 U.S.C. § 158(a), the district court reviews the bankruptcy court's conclusions of law *de novo*. See, e.g., Davis v. Cox, 356 F.3d 76, 82 (1st Cir. 2004); In re Watman, 301 F.3d 3, 7 (1st Cir. 2002). In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's findings of fact will not be set aside "unless clearly erroneous." Fed. R. Bank. P. 8013.

In this case, the Court suspended the briefing of the actual appeal in order to first address a motion to dismiss the appeal as moot. It is well recognized in the bankruptcy context that an

appeal should be dismissed as equitably moot "if no remedy can be fashioned." In re Newport Creamery, Inc., 295 B.R. 408, 417 (B.A.P. 1st Cir. 2003) (citing In re Stadium Mgmt. Corp., 895 F.2d 845, 847 (1st Cir. 1990)). "[M]ootness is a threshold jurisdictional issue." Id. The burden of establishing equitable mootness falls on the moving party. Since the question presented by the pending motion is a question that was not presented to the Bankruptcy Court, this Court's review of the law and the related facts is necessarily *de novo*. That said, to the extent the necessary factual findings overlap with the facts already found by the Bankruptcy Court, the Court notes that the standard of review does not yield any change in the factual narrative.

## II. BACKGROUND

This case is the latest appeal in the long-running bankruptcy case of Vital Basics, Inc and Vital Basics Media, Inc. (together, "Debtor" or "Vital Basics"). On August 31, 2008, Appellant Nicholas Braemer filed the pending appeal with the Bankruptcy Court seeking to appeal the Bankruptcy Court's July 9, 2008 Order Authorizing Plan Fiduciary and Debtor to Enter Into Sale Agreement in Furtherance of the Chapter 11 Plan (Docket # 1027 on Bankruptcy Docket # 04-20734). Appellee Keith Lowey is the Plan Fiduciary under the confirmed Third Amended Joint Plan of Reorganization of Vital Basics, Inc. and Vital Basics Media, Inc. (Docket # 13-2) (hereinafter, the "Plan"), which became effective on December 29, 2004.

Under the Plan, the Plan Fiduciary was charged with monitoring the Debtor's compliance with certain plan provisions, including payments to Debtor's general unsecured creditors (also referred to as "Class 4" under the Plan). The Plan provided for payment in full, with interest, to these Class 4 creditors. The Plan contemplated that the Debtor would retain its assets and continue to sell neutraceutical and related products. Debtor would then pay its Plan obligations from those operating revenues. The Plan alternatively contemplated that Debtor could elect to

sell all or substantially all of their assets to a third party. If such a sale were planned, the Plan Fiduciary was granted authority to negotiate a different or lesser payment to the Debtor's unsecured creditors.

In July 2007, the Plan Fiduciary confirmed that as a result of steadily declining revenues Debtor would be unable to make further Plan distributions. Debtor acknowledged this reality and efforts began to find a buyer of the Debtor's assets. At that point, all Class 4 creditors had received approximately 32 percent of their allowed claims (a figure that reflects the recharacterization of interest payments as payments of principal). However, Vertrue, Inc., the Debtor's largest creditor, had not yet received its pro rata share as a result of objections to Vertrue's allowed claims. In short, Vertrue was owed $246,294.03 in order to be in the same pro rata position as the other creditors.

By early 2008, Debtor also had an outstanding debt to Visionary Investment Limited Partnership ("Visionary") totaling $1,569,000. This debt arose under a July 2005 revolving loan and security agreement that Debtor had entered into in order to meet cash flow requirements for its operations. Under this agreement, Visionary had a first priority security interest in the then-remaining assets of Vital Basics.

In or around February 2008, an unrelated third party, ultimately named Factor Nutrition Labs, LLC ("FNL"), expressed an interest in purchasing some of Vital Basics' assets. The Plan Fiduciary and Visionary both participated in the negotiation of the terms of the sale.

By March 2008, the Plan Fiduciary had grown increasingly concerned about the Debtor's failure to make Plan payments and also became concerned that Vertrue (a Class 4 creditor) was going to seek an attachment of Vital Basics' assets.[1] On March 5, 2008, in order to ensure that

---

[1] Vertrue, in fact, obtained an attachment within days of the Plan Fiduciary entering into the March 5, 2008 security agreement.

3

all creditors received equal treatment under the Plan, Lowey entered into a security agreement with Debtor and obtained a second priority security interest in Debtor's remaining assets on behalf of the entire class of remaining creditors under the Plan. By this action, Lowey turned Vital Basics' pre-confirmation unsecured creditors into post-confirmation secured creditors. The total amount then owed to these creditors totaled approximately $12 million.

On May 30, 2008, the parties executed a Term Sheet pursuant to which FNL agreed to purchase certain of the Debtor's assets. On June 20, 2008, the Plan Fiduciary filed a motion with the Bankruptcy Court titled, "Motion of Plan Fiduciary for Authority to Enter Into Sale Agreement in Furtherance of Chapter 11 Plan" (the "Sale Motion"). In that Motion, the Plan Fiduciary explained that the proposed sale presented was in the best interest of the Class 4 creditors. The motion was initially served on all Class 4 creditors as well as all parties on the regular service list. A hearing on the Motion was set for July 9, 2008. Prior to the hearing, the Sale Motion and notice of the July 9, 2008 hearing was also served on post-confirmation creditors.

Following the July 9th hearing, the Bankruptcy Court entered an order granting the Sale Motion (the "Sale Order"). In part, the Sale Order found that "[t]he Plan Fiduciary and Visionary Investments, LLP each have valid perfected and enforceable security agreements, each creating valid, perfected, and enforceable liens, pursuant to Article 9-A of the Maine Uniform Commercial Code." (Sale Order (Bank. Docket # 1027) at 3.) The Order required the Debtor to serve copies of the Order on all post-confirmation creditors via first-class mailings. The Sale Order also specifically provided that it would become final and effective at 6:00 p.m. on July 21, 2008 absent the receipt of any objections.

On July 21, 2008, Appellant Nicholas Braemer filed an objection to the Sale Order (the "Braemer Objection") as well as an adversary proceeding seeking a temporary restraining order to stop the sale. Braemer was the named plaintiff in a class action case against Vital Basics, Inc., which was then pending in the Los Angeles Superior Court. In that class action, Braemer claimed to be one member of a class of consumers who were harmed by Vital Basics between 2001 and 2005. The Braemer Objection asserted that the class consisted of both pre-confirmation and post-confirmation creditors numbering in the "tens of thousands, if not hundreds of thousands." (Braemer Objection (Bank. Docket # 1030) at 3; Brannan Decl. (Docket # 13) ¶ 23.) The Objection also asserted that the Braemer class had not received any notice of the impending sale until it received a copy of the Sale Order in the mail during the week of July 13-19, 2008.

The Bankruptcy Court held a hearing on the Braemer Objection on August 20, 2008. Following the hearing, by Order dated August 21, 2008, the Bankruptcy Court overruled the Braemer Objection. As a result, the Sale Order became final. That same day, the Bankruptcy Court also entered an order denying Braemer's separate motion for a temporary restraining order and Braemer then filed a notice of voluntary dismissal of the separate adversary proceeding in which the motion for temporary restraining order had been filed. (See Braemer v. Vital Basics, Inc., D. Me. Bankruptcy No. 08-2041, Docket #s 6 & 7.) Braemer never sought a stay of the Sale Order.

Because there was no stay of the Sale Order and because further delays endangered the sale, the parties closed the sale transaction on September 24, 2008. As part of the transaction, releases among the various parties were executed and exchanged and the purchased assets were transferred to FNL. For its part, FNL paid the purchase price of $2,569,000 by transferring a

portion of the sale proceeds to Visionary and then transferring the remainder of the sale proceeds (except a relatively small sum held by an escrow agent as a litigation reserve) to the Plan Fiduciary. Visionary, in turn, sent checks to its investors and the Plan Fiduciary distributed the sale proceeds to the over 690 creditors within Class 4.

FNL has since begun operating its business, including taking the following steps: (1) payment of significant closing costs to attorneys and accountants, (2) entering into a new office lease, (3) hiring approximately ten employees, (4) notifying retailers of FNL's purchase of the assets, (5) purchasing ten new domain names, (6) purchasing new insurance policies and adding retailer and key vendors as additional insureds, and (7) entering into contracts with other key vendors, including a manufacturer, a fulfillment center, a call center, a web host and an outside marketing consultant. In connection with the pending appeal, both Keith Lowey, the Plan Fiduciary, and Raymond Kingsfield, the Chief Financial Officer of FNL, have indicated that there is no practical way to unwind these steps and put all interested parties back into their pre-sale closing positions. Even if it were possible, the Plan Fiduciary indicates that Vital Basics and the transferred assets would "lose all viability and value, so as to be worthless to all creditors, including Braemer." (Lowey Aff. (Docket # 4-2) at 5.)

### III.  DISCUSSION

Via the pending motion, Appellee Lowey, the Plan Fiduciary, seeks to have this appeal dismissed under the doctrine of equitable mootness. As explained by the First Circuit, "[t]he 'equitable mootness' doctrine imports both 'equitable' and 'pragmatic' limitations upon . . . appellate jurisdiction over bankruptcy appeals." In re Healthco Int'l, Inc., 136 F.3d 45, 48 (1st Cir. 1998) (quoting Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d 489, 492 n.5 (1st Cir. 1997), *cert. denied*, 521 U.S. 1120 (1997)); see also In re Conley, 369 B.R. 67, 71 (B.A.P. 1st

Cir. 2007). The "equitable" limitation requires the court hearing the appeal to inquire as to "whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible." In re Healthco Int'l., Inc., 136 F.3d at 48. The "pragmatic" limitation requires the court hearing the appeal to contemplate "proof that the challenged bankruptcy court order has been implemented to the degree that meaningful appellate relief is no longer practicable." Id. The two limitations are "symbiotic." Institut Pasteur, 104 F.3d at 492 n.5.

### A. Appellant Failed to Request a Stay

There is no factual dispute that Braemer failed to request a stay of the Sale Order. To the extent that the motion for a temporary restraining order might be considered substantively similar to a request for a stay, the Court notes that Braemer voluntarily dismissed that proceeding following the denial of the temporary restraining order and has never even sought to appeal that denial. In short, the record amply supports a finding the Appellant, without any valid explanation, repeatedly failed to request a stay at any time between the time the Braemer Objection was overruled and September 24, 2008, when the sale was consummated.

Because interested parties are free to implement a bankruptcy court's order in the absence of a stay, a party who fails to seek such a stay cannot complain that the interested parties acted improperly in implementing that order. See In re Public Service Co., 963 F.2d 469, 473 (1st Cir. 1992) ("[I]n the absence of a stay, interested parties are free to implement the confirmed reorganization plan according to its terms . . . ."). However, Braemer's response repeatedly suggests that the Plan Fiduciary should have held the sale proceeds rather than distributing the proceeds to the Class 4 creditors. In fact, the Sale Order explicitly required the Plan Fiduciary to

make the distributions on a specific timetable. (See Sale Order at 5.) Braemer could have sought a stay of this aspect of the Sale Order but he did not. In short, the Court finds that the actions taken to implement the Sale Order in the absence of a stay were entirely proper.

Nonetheless, "[t]he failure to obtain a stay is not sufficient ground for a finding of mootness." In re Public Service Co., 963 F.2d at 473. Rather, it sets the stage for a change in circumstances that may moot an appeal. See In re Indian Motorcycle Co., Inc., 261 B.R. 800, 806 (B.A.P. 1st Cir. 2001) ("The 'equitable mootness' doctrine will be applied where an unwarranted failure to seek a stay has allowed a change in circumstances to such a degree that a remedy is impracticable or impossible.") The Court, thus, turns its attention to scrutinizing what has changed since the time the Sale Order became final.

### B. Appeal Cannot Provide Meaningful Relief

In fact, much has changed since Braemer's initial objection to the Sale Order; namely, the sale has been consummated, the amounts paid by the buyer have been widely distributed, and the buyer has taken all of the necessary steps to incorporate the purchased assets into a business now operating as FNL.

In his response to the Motion to Dismiss, Braemer first attempts to argue that this case is distinguishable from all other cases finding appeals equitably moot simply because this case "has nothing to do with setting aside a confirmation order or a bankruptcy court 11 U.S.C. § 363(m) sale order." (Appellant Resp. (Docket # 10) at 9.) While this is a factual distinction, it does not foreclose the possibility that the appeal is equitably moot. See In re Stadium Mgmt. Corp., 895 F.2d 845, 848 (1st Cir. 1990) ("[T]he policies of finality and necessity of fashioning effective remedies in bankruptcy law pervade the Code and are not strictly limited to § 363.").

Thus, even in the unique circumstances that led to this Sale Order, the Court must ask the same question: has the Sale Order been implemented to a degree that meaningful relief is no longer practicable even if this appeal is successful? The Court's short answer is: Yes. Since the consummation of the sale, the steps that have been taken by FNL as well as the steps taken by Visionary and the Plan Fiduciary with the proceeds make relief by way of this appeal impractical, if not, impossible.

To the extent that it is relevant to the Court's inquiry, the Court finds that sale amounted to substantial consummation of the Plan. The Plan in this case contemplated a sale of assets (an option that would inevitably be invoked if an asset sale could yield more revenue than ongoing operations). In fact, the asset sale option was explored and invoked only after the Debtor stopped paying its obligations under the Plan and its post-confirmation secured creditors were clearly owed amounts that exceed the value of Debtor's remaining assets. To the extent that Braemer has argued that the Sale Order is somehow divorced from the Plan and thus cannot be considered a substantial consummation of the Plan, the Court rejects that argument.

The Court's inquiry into the pragmatic effects of the Sale Order's implementation has two components. First, the Court considers the steps taken by the purchaser, FNL, since the sale closing, including many good-faith transactions with third parties. In short, it would be impossible to have FNL unwind all of the steps it has taken to incorporate the purchased assets into its business and then return those assets to Vital Basics. Even if such an unwinding were possible, the assets would lose substantial (if not all) value. Thus, Vital Basics simply cannot be returned to the position it occupied in August 2008. Moreover, such a return would be futile in light of the precarious financial situation Vital Basics was in prior to the sale. Given the

perfected security liens, returning Vital Basics to its pre-sale position would not yield any money for Braemer and his fellow plaintiffs.

Second, the Court considers the steps taken with the sale proceeds by Visionary and the Plan Fiduciary. In an apparent recognition that it would be impossible to unwind the portion of the sale that now serves as a cornerstone of FNL's operations, Braemer's response to the Motion to Dismiss now suggests that all the Court would need to do in this case to provide a meaningful remedy is recoup and reapportion the distributed sale proceeds. It is unclear whether Braemer envisions the Court recouping sale proceeds from both Visionary and the Plan Fiduciary or only the Plan Fiduciary. In either case, it is clear that both Visionary and the Plan Fiduciary no longer have the sale proceeds in their possession and that the proceeds were widely distributed. With respect to the sale proceeds distributed by the Plan Fiduciary, the Sale Order makes clear that the proceeds were to be distributed to Vertrue and over 690 other Class 4 creditors according to a specific formula and timetable. Unwinding this distribution and reapportioning the funds would be impractical at best; at worst, Vertrue might well assert that the lesser distribution to it amounted to a material change in the terms of its settlement and thereby lead to an unraveling of the entire deal. Under either scenario, the Court declines to find that the sale proceeds could be recovered and reapportioned "with relative ease." In re Healthco Int'l, Inc., 136 F.3d at 49.

The Bankruptcy Court aptly described this sale at one point as a "salvage operation." (Aug. 20, 2008 Tr. (Docket # 8-2) at 70.) In fact, the sale salvaged approximately $2.5 million for a debtor that owed over $13 million to its secured creditors. This salvage operation cannot be somehow remade or undone to provide Appellant with meaningful relief assuming that his appeal is successful. Given Appellant's failure to obtain a stay and this change in circumstances, the Court finds this appeal to be equitably moot.

**IV.    CONCLUSION**

For the reasons just stated, the Court hereby GRANTS Appellee's Motion to Dismiss Appeal (Docket # 4) and DISMISSES AS MOOT the pending appeal.

SO ORDERED.

                                                 /s/ George Z. Singal
                                                 United States District Judge

Dated this 24th day of February, 2009.